*JONES *et al.* v. FEARNOW *et al.*

Opinion Filed February 8, 1916.

Rehearing Denied April 4, 1916.

(156 Pac. 309.)

1. PUBLIC LANDS—Lands of United States—Decisions of Land Department—Review by Courts. The United States Land Department primarily is intrusted with the disposal of the public domain, and the action of its officers will not be inquired into in the courts, unless it clearly appears that they have committed some

---

*Appealed to the Supreme Court of the United States.

material error of law, or that misrepresentation and fraud were practiced upon them, or that they, themselves, were chargeable with fraudulent practices, and that as a result thereof the patent was issued to the wrong party.

2. **SAME—Suit in Equity.** F. filed a homestead entry upon a tract of unoccupied public land and died before making his final proof. Thereafter J., a qualified homestead entryman, in her own right, presented to the proper officers of the land department a relinquishment of said entry and an application to enter said land, which were accepted, and her homestead entry placed of record. Thereafter the heirs of F. filed a contest against the homestead entry of J., wherein they alleged that her homestead entry was void, on account of certain alleged false statements of said entryman to the effect that she was the wife of F., the original entryman, which contest was rejected, the officers of the local land office and the Commissioner of the General Land Office holding that, no adjudication of the nullity of the marriage having been made by any court of competent jurisdiction, the department could not question the validity of the marriage; the Secretary of the Interior further holding: (1) That this is a question the department cannot decide from the record before it; (2) that, independent of this, the contestants presented no ground upon which their contest can be sustained; and (3) that their delay in proceeding to contest, pursuant to section 2291, Rev. Stat. U. S. (Comp. Stat. 1901, p. 1390), is a sufficient reason for rejecting their contest. Thereafter J. submitted her final proof before the land department, whereupon a patent to said land in due form was issued to her by the United States. Thereafter in a suit in equity commenced by the heirs of F. against J. for the purpose of declaring a resulting trust upon the ground "that the Department of the Interior committed error in said decisions and all of them in refusing to permit these plaintiffs (the heirs of F.) to show that said Luttie B. Jones, then Fearnow (J.), the defendant herein, was not the wife of the said Hollen H. Fearnow (F.), deceased," the foregoing facts were agreed upon by the parties. **Held:** (1) That, inasmuch as J. did not assert any right to the land as the widow of F., or procure the issuance of the patent pursuant to section 2291, Rev. Stat. U. S., the decisions of the officers of the land department in declining to pass upon the validity of the marriage of F. and J. were not erroneous; (2) that, the claim of the heirs resting upon their relationship with F., they are not entitled to the relief prayed for, because they did not pursue their remedy before the land department, pursuant to section 2291, Rev. Stat. U. S.; (3) that, granting the heirs can make their final proof and present the affidavits, etc., required by section 2291 before the court, then the agreement of the parties as to the speculative nature of the homestead entry of F. should also be considered, and in that event, they would be no better off; (4) that the heirs of F. are not entitled to the relief prayed for

upon any theory which may be properly predicated upon the record and agreed statement of facts before us.

(Syllabus by the Court.)

*Error from District Court, Kay County;*
*Wm. M. Bowles, Judge.*

Action by Emily F. Fearnow and others against Luttie B. Jones and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with directions.

*J. F. King,* for plaintiffs in error.

*J. F. King (W. P. Hackney* and *J. T. Lafferty,* of counsel), for defendant in error Phoenix Mut. Life Ins. Co.

*L. A. Maris (William H. England,* of counsel), for other defendants in error.

KANE, C. J. This was a suit in equity, commenced by all of the defendants in error, plaintiffs below, except the Phoenix Mutual Life Insurance Company, a corporation, against the plaintiffs in error, defendants below, for the purpose of declaring a resulting trust. The defendant in error the Phoenix Mutual Life Insurance Company was the holder of a mortgage on the land involved, executed by the plaintiff in error Luttie B. Jones, and was joined with her as a party defendant in the trial court.

This is the third time the cause has been before this court, one phase of it having been considered in *Fearnow v. Jones,* 34 Okla. 694, 126 Pac. 1015, upon a former appeal, and another, upon a motion to dismiss the present proceeding in error. *Luttie B. Jones et al. v. Emily Fearnow et al.,* 47 Pac. 586, 149 Pac. 1138. After the cause

was remanded to the trial court upon the former appeal, it was tried upon certain documentary evidence and an agreed statement of facts, after the consideration of which the trial court entered a decree in favor of the plaintiffs as prayed for, and further held that the mortgage held by the Phoenix Mutual Life Insurance Company "does not constitute any lien or incumbrance upon said premises, and that said mortgage be canceled, set aside, and held for naught."

For the purpose of reviewing this latter decree of the trial court the plaintiffs in error Luttie B. Jones and Elmer Jones commenced this proceeding in error, joining therein as defendants in error the Phoenix Mutual Life Insurance Company, which filed a cross-petition in error for the purpose of reviewing the part of the decree which affects its interests.

In our opinion, the decree rendered by the trial court is erroneous in its entirety. The tract of land involved was originally entered on the 29th day of March, 1899, under the homestead laws of the United States by Hollen H. Fearnow, who immediately upon the filing of said entry went into possession thereof and cultivated and improved the same as his homestead until the date of his death, which occurred on the 6th day of October, 1905. For a considerable portion of the time he thus resided upon the land he and the defendant Luttie B. Jones lived together as husband and wife.

From an examination of the opinion formerly handed down it will appear that the decision of the court turned on the question whether the land department erred in declining to inquire into the validity of the marriage of the entryman Fearnow and the defendant Luttie B. Jones

in a certain contest proceeding instituted against her by his heirs. The question arose upon a demurrer to the petition, which was sustained by the trial court, and overruled on appeal.

As we view the case as it is now more fully presented upon the record and agreed statement of facts, the question of whether the original entryman and the defendant Luttie B. Jones, *nee* Fearnow, were legally married is in no manner material to a determination of this case. The agreed statement of facts, in so far as it is necessary to advert to it, shows that after the death of the entryman, Hollen H. Fearnow, the defendant continued to reside and make her home upon the land as she had formerly done; that on the 28th day of November, 1906, she presented to the proper officers of the land office at Guthrie, Okla., a relinquishment of the land and an application to enter the same as a homestead in her own name, which relinquishment and application were accepted and her homestead entry No. 14423 entered of record; that at said time she was an unmarried female over the age of 21 years, a native-born citizen of the United States, and in every respect entitled to make a homestead entry upon public lands under the homestead laws of the United States; that, after making said homestead entry she continued to reside upon and cultivate and improve said land, and in due time paid the purchase price and finally "proved up" the same under the homestead laws of the United States, whereupon a patent was issued to her, wherein the foregoing facts and her compliance with the homestead laws are fully recited; that on the 12th day of December, 1906, prior to the issuance of the patent, the plaintiffs herein filed their contest affidavit against said entry of said Luttie B. Jones,

then Luttie B. Fearnow; that on the 5th day of January, 1907, the United States land office at Guthrie rejected said contest affidavit as insufficient and rendered a . decision in favor of the contestee; that said contestants appealed from said decision to the Commissioner of the General Land Office, and the said commissioner, on May 13, 1907, affirmed the said decision of the land office; that thereafter the said contestants appealed from the decision of the land office to the Secretary of the Interior, and on the 1st day of September, 1907, the Secretary of the Interior affirmed the decision of the land office. Thus matters rested until patent was issued to the defendant ·Luttie B. Jones, when, some considerable time after the issuance of patent, this suit was commenced to declare a resulting trust.

In view of the conclusion we have reached, it will not be necessary to state in detail the facts in connection with the mortgage held by the defendant the Phoenix Mutual Life Insurance Company, or notice its contentions in relation thereto, as there appears to be no controversy between it and the defendant Luttie B. Jones. If, in the consideration of the case before us, we start with a correct premise, we think there will be no difficulty in demonstrating the correctness of the conclusion hereinbefore indicated. It is well settled that the United States Land Department primarily is intrusted with the disposal of the public domain, and that the action of its officers will not be inquired into in the courts, unless it clearly appears that they have committed some material error of law, or that misrepresentation and fraud were practiced upon them, or that they, themselves, were chargeable with fraudulent practices, and that as a result thereof the patent was issued to the wrong party. *Ross v. Stew-*

*art*, 25 Okla. 611, 106 Pac. 870; *Fast v. Walcott*, 38 Okla. 715, 134 Pac. 848. This principle is recognized as correct by all the parties to this controversy, the plaintiffs contending that they are entitled to relief on account of material errors of law committed by the officers of the land department in a contest proceeding between the heirs and the defendant, as a result of which errors the patent to the land involved herein was issued to the defendant, whereas it should have been issued to the plaintiffs as heirs of the original entryman, Hollen H. Fearnow. It becomes necessary, therefore, to inquire what error of law, if any, did the officers of the land department commit? In the contest affidavit filed before the land office the contestants alleged that the homestead entry of Luttie B. Fearnow was null and void, for the reason that her pretended marriage with Hollen H. Fearnow was invalid. The register and receiver of the local land office and the Commissioner of the General Land Office held, in effect, that, no adjudication of the nullity of the marriage having been made by any court of competent jurisdiction, the department would not question the validity of the marriage upon the protest filed. This is the specific error of law which the plaintiffs allege the officers of the land department committed. The Secretary of the Interior, however, rejected the contest upon two additional grounds, the correctness of which were not questioned by the heirs in their petition, but which will be noticed by us later in connection with another phase of the case.

As the facts were stated in the petition and admitted by the demurrer filed thereto, this court formerly held that the land department erred in declining to inquire into the validity of the marriage of the original entryman and Luttie B. Fearnow. An examination of the opinion

then rendered will disclose that this conclusion was based upon the assumption that the defendant procured the issuance of her patent under section 2291, Rev. Stat. U. S. However, upon the fuller statement of facts contained in the record and in the agreed statement of facts now before us, we are convinced that the decision of the Secretary of the Interior rejecting the contest of the plaintiffs was correct in every particular. As the case now stands, it is conceded that Luttie B. Fearnow, at the time she made her homestead entry, was a qualified homestead entryman, and that she presented her relinquishment and application to file upon this land as such entryman, and that her application was accepted and filed of record as one entitled to make such entry in her own right. It is proper to say at this point that, whilst the record and agreed statement of facts now before us is sufficiently full and clear to disclose the immateriality of the marital relations of Hollen H. and Luttie Fearnow, it is quite deficient when it attempts to disclose the exact facts immediately surrounding the acceptance by the land department of the relinquishment and the application to make homestead entry presented by Luttie B. Fearnow. Neither the relinquishment nor the application to enter said land presented by Luttie B. Fearnow is contained in the record before us, and, although plaintiffs allege in their petition "that at the time of the filing of said relinquishment and the said homestead entry * * * she claimed to be the widow of Hollen H. Fearnow, deceased," the allegation is not covered by any evidence in the record or admission in the agreed statement of facts. It is clear, therefore, that even now we are not favored by all the facts which the officers of the land department had before them and, no doubt, considered

in allowing the defendant to file upon the land. In the absence of proof to the contrary, it will be fair to assume that the relinquishment and the application presented by Luttie Fearnow were in the usual form, and contained no false statements as to her marital relations with the former entryman. At any rate, no such statement was material to any right she was then seeking to assert, and if she made any such statement to the land officers at that time, there is nothing in the record to indicate that they were misled by them, or that they in any way influenced their action accepting the relinquishment and application to make a homestead entry in her own name. Conceding, then, as the court has held, that in a proper case the land department would be required to inquire into the validity of the marriage of parties similarly situated, it is quite apparent to us that in the case before us no such inquiry was necessary, for the simple and sufficient reason that Luttie Fearnow claimed, and acquired, no right by virtue of any relationship with the former homestead entryman, Hollen H. Fearnow, but, on the contrary, her right to the land was based entirely upon a homestead entry made by herself as a qualified entryman under the homestead laws. As it is shown by the contest affidavit filed before the land department, the decisions of the various officers thereof, and the former opinion of this court that the only vice ever urged against the homestead entry of Luttie B. Fearnow was that at the time she made the same she wrongfully claimed to be the wife of Hollen H. Fearnow, we might rest here; but, inasmuch as the heirs have succeeded in successfully maintaining what seems to us a wholly untenable position, we deem it advisable to notice a few other phases of the case.

One of the other features of the case worthy of notice is that, in addition to the findings of the officers of the local land office and the Commissioner of the General Land Office to the effect that the validity of the marriage of the defendant Luttie B. Fearnow was not a proper subject for consideration in the contest proceedings, the Secretary of the Interior, in his decision, based his conclusion upon two additional grounds. Speaking of the legal status of the contestants, he says:

"Contestants have presented no grounds upon which the contest can be sustained. They do not allege a priority of right to make entry, or that the entryman has not complied with the law. Their claim rests upon their relationship to Hollen H. Fearnow, and if they have any right whatever by virtue of their heirship to Hollen H. Fearnow, it is a right to perfect his entry, not to make entry in their own right. To avail themselves of this right, it would be necessary to reinstate that entry and to show that it was improperly canceled, not by reason of any technical objection in the procedure, but upon its merits. Furthermore, their delay in not presenting their claim, even if valid, is a sufficient reason for rejecting their application to contest this entry."

This seems to us to be a correct statement of the law. Section 2291 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 1390), providing for the disposition of a homestead entryman's rights upon his death, is as follows:

"No certificate, however, shall be given, or patent issued therefor, until the expiration of five years from the date of such entry; and if at the expiration of such time, or at any time within two years thereafter, the person making such entry; or if he be dead, his widow; or in case of her death, his heirs or devisee; or in case of a widow making such entry, her heirs or devisee, in case of her death, proved by two creditable witnesses

that he, she, or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of such land has been alienated, except as provided in section twenty-two hundred and eighty-eight, and that he, she, or they will bear true allegiance to the government of the United States; then, in such case, he, she, or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law."

Now it is entirely clear that neither of the parties to this controversy attempted to avail themselves of the remedy provided by the foregoing section of the Revised Statutes. As we have already seen, the defendant Luttie B. Fearnow, instead of claiming any right in the land by virtue of being the widow of the original entryman, made application for the land in her own right, entered the same and proved it up, paying the purchase price, not as the widow of the original entryman, but as a qualified homestead entryman. On the other hand, the heirs, resting their claim upon their relationship to the original entryman, were bound to proceed in accordance with the foregoing statute; but, instead of doing so, they filed a contest against the homestead entry of the defendant, wherein they seek to cancel the homestead entry of Luttie B. Fearnow upon the sole ground that at the time she made said homestead entry she claimed to be the wife of Hollen H. Fearnow, deceased. In view of the fact that she was claiming no right to the land by reason of any relationship existing between herself and the original entryman, we are unable to see the materiality of such a claim or how it would affect the result of this suit, even if it were conceded she made it. If Luttie B. Fearnow had rested her claim upon her rela-

tionship to Hollen H. Fearnow, the original entryman, she would have been required to proceed in accordance with section 2291, *supra,* of the Revised Statutes; but, instead of doing this, as she had a perfect right to do, she elected to file a homestead entry of her own and prove up the land in her own name.  The heirs, instead of pursuing their remedy under section 2291, *supra,* attempted to follow procedure for which there is no warrant in the law, so far as we are informed.  By further reference to this section it will be seen that the proof required by section 2291 must be made within two years after the entryman or his heirs have earned the land by residence, improvement, etc.  In such circumstances we fully agree with the conclusion reached by the Secretary of the Interior that in the contest case the "contestants have presented no grounds upon which their contest can be sustained," and that "their delay in not presenting their claim (in the manner provided by section 2291), even if valid, is a sufficient reason for rejecting their claim to contest this entry."

If we examine the case from still another viewpoint, the same conclusion must be reached.  One of the defenses set up in the answer of the defendants herein was that Hollen H. Fearnow, the original entryman, did not enter the land in controversy in good faith, but for speculative purposes.  Responsive to the issue thus raised, the agreed statement of facts states in effect that about three or four days prior to filing his homestead entry Hollen H. Fearnow, the entryman, entered into a verbal contract with his mother, Emily F. Fearnow, by the terms of which Hollen H. Fearnow for a valuable consideration agreed to enter said tract of land as a homestead in his own name, prove up under the home-

stead laws, and after procuring a patent to the land, make a conveyance of the same to his mother. To avoid consideration of these facts, counsel for plaintiffs say in their brief:

"All questions of fact must in their inception be raised in the land department, and if they have not been raised there, the courts are without jurisdiction to consider them. The land department is invested with sole authority at law to determine questions of fact. The court was without jurisdiction to hear or in any way consider such matters, except the party has presented them or offered to present them to the land department. The United States Constitution and statutes are conclusive upon this question. 'The Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States.' Const. U. S. art. 4, section 3, cl. 2. 'Under the authority of this section, Congress has conferred jurisdiction upon the Commissioner of the General Land Office, under the direction of the Secretary of the Interior, to supervise the disposition of the public lands.' "

In considering this phase of the case, let us assume that this is a correct statement of the law and follow the premise of counsel to its inevitable conclusion. It is conceded that the heirs base their right to the land upon their relationship to the original entryman, Hollen H. Fearnow. Keeping this concession in mind, let us now inquire what it was necessary for them to do in order to acquire title from the United States? To do this we must again revert to section 2291 of the Revised Statutes of the United States. We find that, before the patent could be issued to the heirs, it was incumbent upon them to prove by two credible witnesses that either the entryman or they had resided upon or cultivated the land for a term

of five years immediately succeeding the entry, and to make affidavit that no part of such land had been alienated, except as provided in section 2289, and that they would bear true allegiance to the government of the United States. Then, in such case, the statute further provides, if at that time they are citizens of the United States, they shall be entitled to a patent as in other cases provided by law. It must be conceded, of course, that all the proof, affidavits, etc., required by the statute must be presented before the proper officers of the land department before anyone claiming thereunder would be entitled to a patent. It is obvious, then, that, the heirs not having submitted their final proof before the land department, it will be necessary for them to do so before the court, before they would be entitled to have a resulting trust decreed in their favor, and that this cannot be done if, as their counsel contend, "all questions of fact must in their inception be raised in the land department, and if they have not been raised there, the courts are without jurisdiction to consider them." It does not seem to us to be necessary to pursue this line of inquiry much further. If this premise of counsel for the plaintiffs is conceded, it but leads them up to an insuperable barrier against recovery. On the other hand, if we assume that counsel were in error in their premise, and that final proof on behalf of the heirs may be made before the court, it would seem to follow that the agreed facts in relation to the good faith of the original entryman ought also to be admissible, and in that event the heirs would be placed in no better situation.

It seems to be well settled that the rights of those claiming public lands must be determined by the validity

of the original entry. 32 Cyc. 806; *Watt v. Amos,* 14 Okla. 178, 79 Pac. 109; *Galliher v. Cadwell,* 3 Wash. T. 501, 18 Pac. 68.

Indeed, the homestead entry of Hollen H. Fearnow had formerly been canceled by the land department upon the identical facts agreed upon by the parties herein in a contest proceeding instituted against him by one Lena Barnes, who was permitted to file upon the land in her own name. Her entry, however, was suspended by the Commissioner of the General Land Office for some defect in the notice of contest, and she dismissed her contest case at the time the defendant herein filed the relinquishment and made entry. This ground of contest was well known to the defendant herein, and she would have been entitled to avail herself of it as against the heirs if they had attempted to make final proof before the land department as required by section 2291, *supra.* Admittedly she was a qualified homestead entryman subsequent to the death of the original entryman, whether she was legally married to him or not, and she, or any other qualified homestead entryman, or, indeed, anyone knowing the facts, could, in behalf of the government, interpose this barrier as against anyone resting their right to the land upon the speculative entry of Hollen H. Fearnow. If the equitable remedy the heirs are now invoking was available to them, and the foregoing contention of their counsel were correct, it would be a shrewd move on their part, if not quite honest, to avoid submitting their final proof before the land department, pursuant to section 2291, *supra,* which procedure obviously would be beset by many perils and difficulties, and to wait until the defendant had entered the land, earned it by residence, improvement, payment

of purchase price, etc., made final proof and secured her patent, and then make final proof before the court where all such troublesome pitfalls would be avoided.

As, in our judgment, the heirs would not be entitled to the relief prayed for upon any theory which may be properly predicated upon the record and the agreed statement of facts, the judgment of the court below is reversed, and the cause remanded, with directions to set aside the decree *in toto* and enter a judgment in favor of the defendant Luttie B. Jones.

All the Justices concur.